## BOOKER v. McKNIGHT.
### No. 1805.

Court of Appeal of Louisiana. First Circuit.
March 9, 1938.

R. F. Walker, of Baton Rouge, and W. F. Kline, of Clinton, for appellant.

Richard Kilbourne, of Clinton, for appellee.

LE BLANC, Judge.

This is a possessory action in which plaintiff has appealed from a judgment in the lower court which rejected his demand and dismissed his suit.

The subject matter of the suit is a tract of land said to contain 7.70 acres and on which there is a pond used as a drinking place for cattle. Plaintiff claims ownership of the property by virtue of having acquired it from the Natalbany Lumber Company, Limited, by notarial act passed on November 27, 1936. He alleges that he has had real and actual possession from that date, but that on March 1, 1937, he suffered a disturbance when the defendant herein, William R. McKnight, Jr., forcibly took possession of his property by erecting a fence thereon under a survey to which he was not a party, never having been notified to be present.

Plaintiff's alleged possession, admittedly, was for less than a year previous to his being disturbed, and consequently, in order to maintain his action, it became necessary for him to show that he had been evicted by force or fraud. C. P. art. 49. As it is not contended that he was evicted by fraud, the sole question in the case is whether or not he was evicted by force.

The defendant, for answer, admitted that plaintiff is the owner of the land described in his petition, but denies that it is the property on which his suit is predicated. He denies any forcible eviction as alleged, but avers on the contrary that the fence erected by him on his own property which he and those possessing with him have possessed as owners for more than twenty years was built with plaintiff's knowledge and consent. He alleges that it is he and those possessing with him who have been disturbed by the plaintiff, who, in November 1936, erected a fence on part of their property.

Prior to plaintiff's acquisition of the land herein involved, it seems to have been open property. The pond referred to, which had been a sawmill pond, served as a public drinking place for cattle of the neighborhood. When plaintiff bought it, he built his fence on what he considered as the line of his property and that is when the present controversy arose.

There being some uncertainty about the correct line between the plaintiff's property and that of the defendant which adjoined, the latter employed a surveyor to run a line, and, having determined that the fence erected by the plaintiff encroached on his property, he notified him to that effect and told him that he would build his fence according to the surveyed line. This notice was given by the defendant in the presence of his brother and the surveyor, all three of whom called together on the plaintiff at his house. Defendant and his brother both testify that the plaintiff made no protest, merely insisting that he had bought the property. The surveyor did not recall what plaintiff had said. According to plaintiff's own testimony, the only protest he uttered was to the effect that he told them that the property was his and that "they had better see further before they put a fence on it." In the absence of any further objection or action on the part of the plaintiff, the defendant proceeded to build his fence within "seeing distance," as he says, of the plaintiff's house. About three weeks later, defendant tore down the fence which plaintiff had built and which he contended was on his property. Such was the situation when this proceeding was instituted, and the sole question to be determined is whether the defendant's actions constituted an eviction *by force,* within the meaning of that term under the provisions of article 49, C.P.

The only Louisiana case to which we have been referred and which we have been able to find which has any bearing on the question is that of Dickson et al. v. Marks, 10 La.Ann. 518. The suit was one of the same nature as this, the cause of action being predicated on an allegation that the defendant had "violently and illegally taken possession" of the plaintiff's property. The facts which amounted to the violence alleged are not stated in the opinion. However, from the charge of the district judge to the jury before which the case was tried, we might infer that they were, as in this case, the construction or erection of a fence. The case went to the Supreme Court on an exception taken to the judge's charge as a whole. In his instructions, the judge had charged the jury to the effect that, in order to maintain the possessory action, the plaintiff or his vendors must have had actual possession of the land as owner for twelve months previous to the disturbance, "unless he was evicted by *force and arms,*" and that taking possession of the land in the absence of the party already in possession *"by fencing it in, would not be a taking vi et armis."* The court expressed the opinion that the judge had not erred in so charging the jury, and upon the merits, after considering the evidence, held that it was not prepared to say that the verdict was erroneous.

From the portions of the charge which we have italicized it might be inferred that the court's interpretation of the word "force" as used in article 49 of the Code of Practice would imply a force amounting to some sort of violence, which after all appears to be the meaning given to the word in connection with the common-law action against forcible entry and detainer. In discussing this action which is akin to the one presently before the court, especially in relation to the degree of force required to maintain it, Ruling Case Law, vol. 11, p. 1160, § 23, makes the following comment:

"As the rule is frequently stated, whenever the party either by his behavior or by his speech at the time of his entry gives those who are in possession just cause to fear that he will do them bodily harm if they do not give way to him, his entry is esteemed forcible, whether he cause the terror by taking with him an unusual number of servants or companions, or by arming himself with unusual weapons or in such manner as plainly to indicate a design to back his pretensions by force, or by actually threatening to beat, maim or kill those who continue in possession, or by using such speeches as plainly imply a purpose of using force against those who shall offer resistance."

In Corpus Juris, vol. 26, p. 827, § 59, it is stated that "according to the weight of authority, to render an entry forcible it must be accompanied either by actual violence, or by circumstances tending to ex-

cite terror in the owner or other persons in possession, and to prevent them from maintaining their rights. * * *"

There certainly is nothing in the testimony in this case from which such conduct on the part of the defendant could be inferred, and the plaintiff himself does not pretend that he ever was excited to any degree of fear or terror by any action on the part of the defendant or any one acting for him. In wanting to emphasize the point that plaintiff could easily have protested against his building the fence, defendant, on being asked if plaintiff knew about it, answers: "I suppose he did, we were in seeing distance of his house, whooping and hollering." From the expression "whooping and hollering," counsel for plaintiff would want it to be implied that there was meant some intimidation, but we do not so construe defendant's use of those words in connection with the answer being given. We think rather, as already indicated, that he was merely giving emphasis to his answer showing that plaintiff was bound to know that the fence was being built and offered no protest whatever.

After a careful consideration of the evidence in the case, we have come to the conclusion that it was correctly decided by the judgment of the lower court. At least we are unable to find manifest error, and, therefore, the judgment stands affirmed.